# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROSEMARY ANDERSON )<br>)<br>    **Plaintiff,** )<br>)<br>v. )<br>)<br>UNITED CONVEYOR SUPPLY, )<br>COMPANY )<br>)<br>    **Defendant.** ) | Case No. 04 C 6621<br><br>Magistrate Judge Morton Denlow |

## MEMORANDUM OPINION AND ORDER

After working for seven years at United Conveyor Supply Company ("Defendant" or "United Conveyor"), Plaintiff Rosemary Anderson ("Plaintiff") was terminated after returning to work from a six-week leave of absence following surgery unrelated to her disability. She claims that she was fired because of her disability, degenerative arthritis, and her age, fifty-seven, and has filed a two-count disability and age discrimination complaint. Defendant asserts that Plaintiff's termination was lawful because she was laid off due to a reduction-in-force wherein her work was easily assumed by two other existing employees. Defendant has filed a motion for summary judgment that is now before the Court. For the reasons stated herein, the Court grants the Defendant's motion for summary judgment on both counts.

## I. BACKGROUND FACTS

The following facts are undisputed or presented in the light most favorable to Plaintiff when contested.

## A. PLAINTIFF'S CAREER AT UNITED CONVEYOR SUPPLY COMPANY

Plaintiff, Rosemary Anderson, was born on February 21, 1947. Compl. at ¶ 4.[1] She was first employed by Defendant from April 1995 until February 1996 when she went to work for Allendale and Associates. DS ¶ 1. Sometime in January 1997, Plaintiff was invited to apply for a supervisory position in Defendant's production department. Anderson Dep. at 11-12. On January 13, 1997, Plaintiff returned to United Conveyor as Supervisor of Administrative Services. DS ¶ 1. She held that supervisory position until her termination on January 26, 2004. *Id*.

Her duties as Supervisor of Administrative Services included supervising two employees, Ellen Layne and Martha Lind, filling out NAFTA clerical requests (certificates required by North American Free Trade Agreement to accompany Defendant's Canadian exports), creating databases, and working on any special requests from the purchasing manager, quality manager, or transportation manager. Anderson Dep. at 40-45. During her tenure with Defendant, Plaintiff received annual reviews averaging a rating of 3.4 on a 5 point scale. Hauck Dep. at 21. These ratings were considered average. *Id.* Her immediate supervisor was Phil Hauck ("Hauck"), Manager of the Deerfield District Office. *Id*. at 14.

## B. PLAINTIFF'S DISABILITY

---

[1] Citations to the record are in the following form: Defendant's 56.1(a) Statement of Material Facts are cited as DS ¶____; Plaintiff's 56.1(a) Statement of Additional Facts are cited as PS ¶____; Defendant's 56.1 Response is cited as DR ¶ ___; Plaintiff's Memorandum of Law in Opposition to Summary Judgment is cited as Pl. Mem. at____; Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment is cited as Def. Mem. at ____; Plaintiff's Complaint is cited as Compl. at ¶___; Depositions are cited as _____ Dep. at _____.

In 2002, Plaintiff was diagnosed by her family physician with degenerative arthritis. Anderson Dep. at 20. Although Plaintiff did not provide Hauck with written documentation from her doctor regarding this disability, she informed Hauck orally of her condition. *Id.* Hauck acknowledged being aware of her disability. Hauck Dep. at 21. After being diagnosed in 2002, Plaintiff made several accommodation requests for her condition. Anderson Dep. at 22. She asked for an ergonomic chair, keyboard, headset, and wheelchair accessible ramp. *Id.* at 22, 77. These accommodations were approved by Hauck to Plaintiff's satisfaction. *Id.* at 21-22.

During her employment, Plaintiff also had numerous leaves of absences due to various surgeries. DS ¶ 2. Before each surgery, Plaintiff asked Hauck for permission to work from home. Anderson Dep. at 28. With one exception, all of her requests to work from home were denied. *Id.* Plaintiff's only approved request was authorized by her then-supervisor Doug Basler when she had bunion surgery in 1995 and she was allowed to work from home for three weeks. *Id* at 30. Plaintiff has no quarrel, however, with any of Defendant's conduct regarding her degenerative arthritis or her previous leaves of absence. *Id.* at 22, 39.

C. **PLAINTIFF'S DECEMBER 2003 REQUEST TO WORK FROM HOME**

In December 2003, Plaintiff had a hysterectomy, a surgery unrelated to her ongoing degenerative arthritis disability. Anderson Dep. at 33-34. On December 8, 2003, Plaintiff spoke with Hauck and, as she had prior to her other surgeries, orally requested to work from home for six weeks following her surgery. *Id.* at 26. At the time of this request, she

3

presented Hauck with a document from her surgeon, Dr. Michael J. Hubbell, which indicated she would be having surgery. *Id*. at 25. This document did not actually recommend any accommodations beyond being off work for six weeks to recuperate from surgery. *Id*. at 33. In fact, when she returned to work on January 26, 2004, Plaintiff was able to work without any accommodation. *Id.* at 37-38.

Plaintiff further states that prior to speaking with Hauck, she checked with Ed Pozezinski, the manager of Internet Technologies, about the possibility of accessing work databases from home in order to fulfill her duties during the six week post-operative recovery period. Anderson Dep. at 28. Pozezinski indicated that if Hauck agreed to the request, then he would have no problem with her request to work from home. *Id.* at 29. Plaintiff states that Hauck denied her request and told her she needed to recuperate, not work, during those six weeks. *Id.* at 24.

**D.     PLAINTIFF'S TERMINATION**

On January 26, 2004, Plaintiff had fully recovered and returned to work. Anderson Dep. at 37-38. Plaintiff worked until 3:00 P.M. that afternoon when Hauck called her into his office. *Id*. at 37. Plaintiff was terminated at this meeting. *Id.* Defendant states that Plaintiff's termination was simply a reduction in work-force and her position was eliminated. Hauck Dep. at 33-34. Because Plaintiff did not have many tasks, two employees were able to fulfill her duties in addition to their own tasks. Layne and Johnson (formerly Lind) Affidavits. Plaintiff states that her position was not actually eliminated because her duties, as Defendant acknowledges, were simply shifted to the other two employees, Martha Lind

4

and Ellen Layne. DR ¶ 23. Martha Lind was twenty-eight years old and Ellen Layne was fifty-eight years old. DR ¶19. Hauck also acknowledges that Plaintiff was the only person he had fired due to a reduction in force since he first became manager in 1982. Hauck Dep. at 39-40.

As evidence of the Defendant's improper animus, Plaintiff cites several statements made by Defendant's agents and other employees. During his deposition, Hauck said that having employees take time off represents a loss of productive time. Hauck Dep. at 34. Additionally, Plaintiff, after her termination, was told by former co-workers that Defendant had a problem with Plaintiff's medical leaves of absence. Plaintiff was told by Judy Gillis, a co-worker, that she (Judy Gillis) was not surprised by Plaintiff's discharge because Hauck had a problem with employees taking time off from work. Anderson Dep. at 47-48. Bobbie Klienfelder and Debbie Lorenz expressed similar feelings and stated to Plaintiff that they also knew Hauck had a problem with Anderson being off work for surgeries. *Id.* at 49-50, 53. Bill Anderson, another co-worker, told Plaintiff that he was not surprised by her termination because he was aware that Martha Lind wanted Plaintiff's position. *Id.* at 51. The statements of Judy Gillis, Bobbie Klienfelder, Bill Anderson, and Debbie Lorenz are out-of-court statements constituting hearsay, and the Court gives these statements no weight. *See* Fed. R. Evid. 802; *Gustovich v. AT&T Communications, Inc.,* 972 F.2d 845, 849 (7th Cir. 1992) ("When action on a motion for summary judgment the judge considers only evidence that would be admissible at trial").

E. **TREATMENT OF OTHER EMPLOYEES**

5

Plaintiff argues that Defendant's actions toward employees other than Plaintiff also evidence an improper age and disability animus. To show this animus, Plaintiff alleges that most of her duties were shifted to Martha Lind, a younger (twenty-eight years old) and not disabled employee who Plaintiff supervised. Anderson Dep. at 61-2; DR ¶ 23.

Additionally, Plaintiff points to Michael Jacobs' deposition admission that Debbie Lorenz, another employee, was allowed to work from home on one occasion following her surgery. Jacobs Dep. at 32. Plaintiff, however, does not bring forth any additional facts detailing Debbie Lorenz's position within the company, her duties, or her medical condition.

**F.    THE LITIGATION**

Plaintiff filed a two count complaint. Count I is titled "Discrimination based on Disabilities" and sets forth a failure to accommodate claim and a disparate treatment claim based on her termination. Count II is titled "Age Discrimination" and proceeds under a disparate treatment theory for alleged age discrimination.

## II. DISCUSSION

**A.    SUMMARY JUDGMENT STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, a moving party is entitled to judgement as a matter of law "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence presented is such that a jury could reasonably return a verdict for either the plaintiff

or the defendant. *Anderson v. Liberty,* 477 U.S. 242, 255 (1985). Initially, the moving party bears the responsibility of demonstrating the absence of a genuine issue of material fact by identifying those portions of pleadings, depositions, answers to interrogatories and admissions on file which support its claims. Subsequently, the nonmoving party bears the burden of showing the *existence* of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-2; *Ruffin-Thompkins v. Experien Info. Solutions, Inc.,* 422 F.3d 603, 607 (7th Cir. 2005). The nonmoving party may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact requiring trial. The evidence must be evaluated in the light most favorable to the nonmoving party and the court cannot make credibility determinations or weigh the evidence. *Anderson,* 477 U.S. at 255; *Abdullahi v. City of Madison,* 423 F.3d 763, 773 (7th Cir. 2005).

**B.      AMERICANS WITH DISABILITIES ACT**

Congress passed the Americans with Disabilities Act to prohibit discrimination against individuals with disabilities. 42 U.S.C. §§ 12101(a), (b)(1); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 477 (1999) . A disability is "a physical or mental impairment that substantially limits one or more of the major life activities of [the disabled] individual" and includes the state of "being regarded as having such an impairment." 42 U.S.C. §§ 12102(2)(A),(C); *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). The physical or mental impairment must not only substantially limit a person from doing activities that are of central importance to most peoples' lives, but its impact must be permanent or long term. *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198

(2002); *Sears*, 417 F.3d at 797.

Disability discrimination encompasses two distinct types of discrimination claims: disparate treatment and failure to accommodate. A failure to accommodate theory looks at whether the employer made reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual. 42 U.S.C. § 12112(b)(5)(A); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996). A disparate treatment theory focuses on a "qualified individual with a disability" and her treatment in comparison to a similarly situated employee who did not have a disability. *Hoffman v. Caterpillar,* 256 F.3d 568, 572. (7th Cir. 2001). In this case, Plaintiff proceeds under both theories.

### 1. Failure to Accommodate

In a reasonable accommodation claim, a plaintiff must establish the following three elements of a *prima facia* case: (1) she is a qualified individual with a disability; (2) the defendant was aware of her disability at the time of her request; and (3) the defendant failed to provide her with a reasonable accommodation. *Sears*, 417 F.3d at 796.

Reasonable accommodations may include: (1) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (2) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities. *Hoffman,* 256 F.3d at 572-73. A home office, however, is rarely a reasonable accommodation because

most jobs require the kind of teamwork, personal interaction, and supervision that simply cannot be had in a home office situation. *Rauen v. United States Tobacco Manufacturing, LP,* 319 F.3d 891, 896-97 (7th Cir. 2002). Similarly, an employee's ability to perform all essential elements of her job without any accommodation weighs against the reasonableness of a request to be working from home. *Id.*

While it is not disputed that Plaintiff's degenerative arthritis is a disability which qualifies for reasonable accommodation under the ADA, Plaintiff's hysterectomy is not a disability as recognized by the Act. To qualify as a disability, a mental or physical impairment must substantially limit the person from doing activities that are of central importance to most peoples' lives and the impact must be permanent or long term. *Toyota*, 534 U.S. at 198; *Sears*, 417 F.3d at 797. Plaintiff's hysterectomy only temporarily limited Plaintiff, and, consequently, does not qualify as a long term impairment protected under the ADA.

Although Plaintiff points to a myriad of factors to show that the accommodation was possible and that Defendant should have accommodated her, none of them are sufficient to show that Defendant had a duty under the ADA to accommodate her request. In fact, Plaintiff admits that when she returned to work on January 26, 2004, she could fulfill all her duties without any accommodation. Additionally, Defendant concedes that she has no quarrel with any of the Company's conduct regarding her degenerative arthritis or related leaves of absence. Because Plaintiff's surgery was not a long term or permanent impairment covered by the ADA, and because Plaintiff does not challenge the accommodations she

9

received for her degenerative arthritis, the Court grants the Defendant's motion for summary judgment in regards to the Plaintiff's claim for failure to accommodate.

### 2. Disparate Treatment

A disparate treatment claim under the ADA, like disparate treatment claims brought under other federal anti-discrimination statutes, may be proved either directly, or indirectly using the *McDonnell Douglas* burden-shifting method. *Hoffman,* 256 F.3d at 572. Plaintiff proceeds under both the direct and the indirect method.

    a.    Plaintiff has not shown evidence sufficient to survive a motion for summary judgment under the direct method for proving disparate treatment.

Under the direct proof method, the plaintiff must demonstrate that the defendant's decision to discharge her was motivated by the plaintiff's disability. *Robin v. Espo Engineering Corp.,* 200 F.3d 1081, 1089 (7th Cir. 2000). To survive a motion for summary judgment, the plaintiff is required to present evidence sufficient to allow a rational jury reasonably to conclude that but for her disability, the defendant would not have fired her. *Id.* Under the direct method there are two types of permissible evidence. *Buie v. Quad/Graphics, Inc.,* 366 F.3d 496, 502-03 (7th Cir. 2004). First, there is evidence of the type that if believed, would prove the fact in question without reliance on an inference or presumption. *Id.* This type of evidence essentially requires an admission by the decision-maker that the decision was in fact discriminatory in intent. *Id.* The second type of evidence is circumstantial evidence that allows a jury to infer intentional discrimination. *Id.*

There are three types of circumstantial evidence allowed: (1) suspicious timing,

ambiguous oral or written statements, behavior toward or comments directed at other employees in the protected group; (2) evidence that employees similarly situated to the plaintiff other than in the characteristic on which an employer is forbidden to base a difference in treatment received systematically better treatment; and (3) evidence that the plaintiff was qualified for the job in question but was replaced by a person not having the protected characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination. *Troupe v. May Department Stores Co.,* 20 F.3d 734, 736 (7th Cir. 1994).

In cases where the timing of adverse employment action is an issue, the Seventh Circuit has cautioned that a "temporal sequence analysis is not a magical formula which results in finding of discriminatory cause." *Foster v. Arthur Andersen, LLP,* 168 F.3d 1029, 1034 (7th Cir. 1998). Suspicious timing alone does not create a genuine issue as to a causal connection between termination and improper motive. *Id.* To avoid summary judgment using circumstantial evidence, the plaintiff must construct a "convincing mosaic" that "allows a jury to infer intentional discrimination by a decision-maker." *Troupe,* 20 F.3d at 737.

In this case, Plaintiff presented no evidence that would prove, without reliance on an inference or presumption that but for her disability, she would not have been discharged. In fact, Plaintiff concedes that her hysterectomy was not related to her degenerative arthritis disability. Additionally, she admits that she has no dispute with the company about its treatment of her degenerative arthritis.

    b.    Plaintiff has not presented enough evidence under the indirect method for disparate treatment to survive a motion for summary judgment.

Under the indirect method adopted in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), a burden-shifting approach is used. First, the plaintiff must establish the following elements of the *prima facia* case: (1) she is disabled under the ADA; (2) she is qualified to perform the essential functions of her job with or without reasonable accommodation; (3) she has suffered from an adverse employment decision because of her disability; and (4) she was treated differently than a similarly situated person outside the protected class. *Hoffman,* 256 F.3d at 572.

In a traditional reduction in force case (RIF), an employer permanently eliminates a position from the workforce. *Krchnavy v. Limagrain Genetics Corporation,* 294 F.3d 871, 875-76 (7th Cir. 2001) (quoting *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 693 (7th Cir. 2000)). In a "mini-RIF", however, a single employee is discharged and her responsibilities are assumed by other members of the workforce. *Id.* The plaintiff in a mini-RIF does not need to show that similarly situated employees were treated better because employers might use the RIF description to recharacterize an unlawful termination as a

reduction in work force. *Michas,* 209 F.3d at 693. Consequently, a defendant in a mini-RIF need only show that her duties were absorbed by employees who were not members of the protected class. *Krchnavy,* 294 F.3d at 876.

If the plaintiff succeeds in making out a *prima facie* case, the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse employment action. *Schuster v. Lucent Technologies*, Inc., 327 F.3d 569, 574 (7th Cir. 2003); *Buie,* 366 F.3d at 503. If the employer provides such a reason, the plaintiff bears the ultimate burden of showing that it is a pretext for discrimination. *Id.; Schuster,* 327 F.3d at 574. The plaintiff may establish pretext with evidence that the defendant was more likely than not motivated by a discriminatory reason or that its explanations are not worthy of credence, i.e., they are factually baseless, did not actually motivate the defendant, or were insufficient to motivate the adverse employment action. *O'Neal v. City of New Albany,* 293 F.3d 998, 1005 (7th Cir. 2002). In the absence of any direct evidence of discriminatory motive, however, courts cannot second-guess the business decision made by an employer. *Michas,* 209 F.3d at 695 (quoting *Wolf v. Buss (America) Inc.,* 77 F.3d 914, 920 (7th Cir. 1996)).

Defendant disputes that Plaintiff was meeting Defendant's legitimate expectations and points to the affidavits of Layne and Johnson to establish that Plaintiff did not have sufficient work to justify her continued employment. However, Plaintiff's lack of work is not indicative of her abilities or qualification. There is no evidence showing that Plaintiff was not doing the work given to her. The fate of this claim turns, therefore, on whether a reasonable jury could find Defendant's proffered reason for Plaintiff's termination–a

reduction in work force–is a pretext, and that the disability was a determinative factor in Plaintiff's termination.

Defendant states that Plaintiff's termination was a reduction in work force. Defendant presents evidence to support this claim, including the affidavits of Martha Lind and Ellen Layne indicating that Defendant did not have enough work for Plaintiff and that, in her absence, they were able easily to perform all of Plaintiff's duties. In light of this legitimate, nondiscriminatory reason for termination, the burden shifts to Plaintiff to demonstrate that the reason given was a pretext. *Schuster,* 327 F.3d at 574.

To show pretext, Plaintiff must present evidence from which the Court may infer that a discriminatory reason more likely than not motivated the employer, or that the employer's explanation is not worthy of credence. *Michas,* 209 F.3d at 687. To support her pretext theory, Plaintiff points to circumstantial evidence related to the timing of her termination and the fact that she was the only employee in more than twenty years to be terminated due to a reduction-in-force. However, Plaintiff provides no evidence that Defendant's stated reasons were not true. In the absence of any such evidence, Plaintiff has not raised a genuine issue of material fact as to the true reason for her termination. The Court therefore grants Defendant's motion for summary judgment.

## C.     AGE DISCRIMINATION IN EMPLOYMENT ACT

The Age Discrimination in Employment Act ("ADEA") prohibits an employer from discharging an employee on the basis of her age if she is over 40 years old. 20 U.S.C. § 623(a)(1). To succeed under a disparate treatment theory, an ADEA plaintiff must show that

"the employee's protected trait actually played a role in the [decision-making] process and had a determinative influence on the outcome." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993) The plaintiff may do so using either the direct or indirect methods outlined above in section B.

    1.    The plaintiff has failed to show enough evidence to support an age discrimination claim under the direct method to survive a motion for summary judgment.

To survive a motion for summary judgment, Plaintiff is required to present evidence sufficient to allow a rational jury to reasonably conclude that but for age, the Defendant would not have fired her. Plaintiff has presented no direct or circumstantial evidence to allow such an inference.

    2.    The plaintiff has not shown enough evidence to support an age discrimination claim under the indirect method to survive a motion for summary judgment.

Because it is undisputed that Plaintiff was the only employee to be discharged in January 2004 as a result of a reduction in force, the mini-RIF paradigm applies. In a single-discharge, or mini-RIF, the plaintiff does not need to make a showing that "similarly situated" employees were treated better because employers might use the RIF description to recharacterize an unlawful termination as a reduction in work force. *Michas,* 209 F.3d at 693. Therefore, in a mini-RIF, the plaintiff must establish the following elements of a *prima facia* case: (1) plaintiff was a member of the protected age group; (2) she was satisfying the employer's legitimate expectations; (3) she was discharged; and (4) her duties were absorbed by employees who were not members of the protected class. *Krchnavy,* 294 F.3d at 876.

Defendant challenges the second and fourth prong of the *prima facia* case. As discussed earlier, Defendant did not bring forth any credible evidence that Plaintiff was not qualified for the job or that she was incompetent. Defendant's argument fails on the forth prong as well because Defendant admits that one employee who took over Plaintiff's duties was younger. In a mini-RIF, a defendant only needs to show that her duties were absorbed by employees who were not members of the protected class. *Krchnavy,* 294 F.3d at 876. Therefore, the success of this claim turns on whether a reasonable jury could find Defendant's proffered reason for Plaintiff's termination–a reduction in work force–is a pretext, and the Plaintiff's age was a determinative factor in Plaintiff's termination.

Plaintiff provided no circumstantial or direct evidence to rebut Defendant's proffered reasons. Its only evidence is that one of the employees who took over most of Plaintiff's duties was younger. However, even viewing the facts in the light most favorable to Plaintiff, the Court cannot draw an inference of pretext. Simply retaining younger employees without any other evidence tending to show that the employer had discriminatory intent is not enough. *Gadsby v. Norwalk Furniture Co.,* 71 F.3d 1324, 1333 (7th Cir. 1995). The Court grants Defendant's motion for summary judgment.

### III. CONCLUSION

Plaintiff was a member of the ADA and ADEA protected classes when she was terminated. Under the ADA, Plaintiff has failed to come forth with sufficient evidence, under the both the direct and indirect method, for a jury to decide that Plaintiff suffered an

adverse employment action because of her disability, degenerative arthritis, or that Defendant's reasons were pretextual.

Under the ADEA, Plaintiff has not produced evidence to show that in terminating Plaintiff, Defendant was motivated by a prohibited bias. Defendant has put forth sufficient evidence to articulate a nondiscriminatory reason for the adverse employment action. A reasonable jury could not conclude that Plaintiff's termination was pretextual.

**Defendant's motion for summary judgment is granted and judgment is entered in favor of Defendant United Conveyor Supply Company and against Plaintiff Rosemary Anderson on both counts of Plaintiff's complaint.**

SO ORDERED THIS 15th DAY OF NOVEMBER, 2006.

**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

**Copies mailed to:**

| | |
|---|---|
| **Michael T. Smith** | **Scott Allan Kogen** |
| Michael T. Smith & Associates | Law Offices of Scott A. Kogen |
| 440 West Irving Park | 134 N. LaSalle, #1515 |
| Roselle, IL 60172 | Chicago, IL 60602 |
| Counsel for Plaintiff | Counsel for Defendant |